## SUAD A. NIAZI AND ANOTHER v. ST. PAUL MERCURY INSURANCE COMPANY.

121 N. W. (2d) 349.

April 11, 1963—No. 39,016.

*Schermer & Gensler* and *Irvin E. Schermer,* for relators.

*Meagher, Geer, Markham & Anderson, M. J. Coyne,* and *O. C. Adamson II,* for respondent.

SHERAN, JUSTICE.

On November 9, 1959, St. Paul Mercury Insurance Company (hereinafter called the insurer) issued its policy of automobile liability insurance to relator Suad A. Niazi. The policy contained liability medical pay and uninsured motorist coverages applicable to the named insured and his wife, relator Dorothy Niazi.

On June 1, 1960, while Niazi was operating his automobile with his wife as a passenger, it was involved in a collision with an automobile operated by David Johnson, who was uninsured. Both Niazis sustained injuries and incurred resultant medical expense. The insurer at first contended that the policy had lapsed for nonpayment of premiums. However, a declaratory judgment action resulted in the trial court's ruling in favor of the insured, and on November 11, 1960, the insurer advised counsel for the Niazis that it would "accept coverage under the terms and conditions of the policy." It also informed him: "In the near future an adjuster from the company will be in contact with you to work out the details of the settlement." On August 8, 1961, the insurer's attorney wrote Mr. Schermer, the lawyer for relators, requesting information on special damages and medical reports. The request was repeated by letter dated September 20. On October 10 relators' attorney wrote that he was "now in a position to discuss settlement" and suggested a meeting. The medical reports and evidence of special damages were again requested on November 2. On November 22, the medical reports and a list of the medical expenses incurred were provided and a settlement demand was made by the insured. On November 28 the insurer was provided the dates on which the Niazis were hospitalized. On February 13, 1962, Mr. Schermer inquired as to when payment could be anticipated. On March 12 he inquired "whether your company intends to discuss settlement of the claims." No further action hav-

ing been taken, counsel for the Niazis advised the insurer on June 1, 1962, that unless he heard from it within 10 days, an action would be commenced to recover under the policy.

This suit, instituted by the Niazis on or about June 12, 1962, is for recovery under the medical pay and uninsured motorist provisions of the policy. On August 2, 1962, the insurer mailed to the Niazi home in Granite Falls a demand that the controversy be submitted to arbitration in accordance with the provisions of the policy. In its answer, served on or about August 12, the insurer admits an obligation to the Niazis under the medical pay provisions of the policy; offers to pay the husband's medical expenses; puts Dorothy Niazi to her proof as to the amount of her medical bills and the necessity for them;[1] denies that the accident occurred under circumstances making the uninsured motorist legally liable for the injuries sustained by the Niazis; and puts the Niazis to their proof as to their damages. The insurer also interposed as a defense the failure of the Niazis to submit to arbitration and alleged it had made a demand for arbitration on August 2, 1962.

The policy provisions required that the arbitration be in accordance with the rules of the American Arbitration Association. Under its Rule III, Section 7, arbitration is initiated by a written notice or demand for arbitration sent to the adverse party and filed with the American Arbitration Association. The insurer did not file copies of the notice mailed relators August 2 with the association and did not then pay the initial deposit fee required by its rules. Had it done so, the Niazis would have been required to file an answering statement and a date for an arbitration hearing would have been set.[2]

The case remained at issue and for trial by jury from August 1962 until January 15, 1963, at which time a pretrial conference was held before the Honorable Leonard Keyes. No formal application for a stay

---

[1] The claim for medical expense under this insurance contract is so much related to the larger claim under the uninsured motorist coverage that it will not be considered separately even though such claims are not made subject to arbitration.

[2] We note that as of the present time a proper demand has been filed and the matter is pending with the association.

of the action and an order for arbitration has been made under Minn. St. 572.09. The parties do not agree as to the procedure followed at the pretrial conference. Relators contend:

"* * * Judge Keyes, upon his own motion, but with the acquiescence of counsel for the insurer, ordered that all proceedings be stayed until the Niazis submitted to arbitration pursuant to the arbitration provisions of the policy. This Order was made although Judge Keyes was advised by counsel for plaintiffs that it was their intention to show that the insurer had waived its right to arbitration and was estopped to assert it as a defense."

The insurer contends:

"* * * The order for stay of further proceedings in the district court pending compliance with the arbitration agreement was not issued on the judge's own motion, but upon the oral motion of counsel for the defendant. The insurance policy under which plaintiffs make their claim was placed in evidence, * * * and the defendant then moved for stay of further proceedings in the district court until there had been compliance with the arbitration provision * * * of the policy. No objection to any procedural defect or lack of notice was then raised by the plaintiffs, both parties entering into argument concerning the merits of the motion. Upon hearing these arguments, the court issued its order staying further proceedings in the district court until such time as the parties comply with and carry out the terms of the arbitration provision in the policy. The summary disposition of the question of the existence of the arbitration agreement was made pursuant to the provisions of M. S. A. § 572.09."

The trial judge confirms the latter version.

Relators petition for a writ of mandamus directing that the stay order be set aside and the matter be tried regularly in the district court and, in support, argue:

(1) Absent application for a stay of proceedings and an order for arbitration under § 572.09, and a hearing as there provided, the trial court had no authority to stay proceedings pending arbitration.

(2) The insurer waived its right to arbitration and is estopped now to assert it.

(3) The insurer was required to but did not establish that relators had *refused* to arbitrate, and their failure to invoke arbitration cannot be construed as such a refusal.

■ Since April 24, 1957, written agreements to arbitrate are interpreted with reference to the Uniform Arbitration Act then adopted (now Minn. St. 572.08 to 572.30).

The clause embodied in the policy of insurance involved here reads:

"If any person making claim hereunder and the company do not agree that such person is legally entitled to recover damages from the owner or operator of an uninsured automobile because of bodily injury to the insured, or do not agree as to the amount of payment which may be owing under this Part, then, upon written demand of either, the matter or matters upon which such person and the company do not agree shall be settled by arbitration in accordance with the rules of the American Arbitration Association * * *."

Minn. St. 572.09 provides:

"(a) On application of a party showing an agreement described in section 572.08, and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration * * *.

\* \* \* \* \*

"(c) If an issue referable to arbitration under the alleged agreement is in an action or proceeding pending in a court having jurisdiction to hear applications under clause (a), the application shall be made therein. Otherwise and subject to section 572.25, the application may be made in any court of competent jurisdiction.

"(d) Any action or proceeding involving an issue subject to arbitration shall be stayed if an order for arbitration or an application therefor has been made under this section or, if the issue is severable, the stay may be with respect thereto only. When the application is made in such action or proceeding, the order for arbitration shall include such stay.

"(e) An order for arbitration shall not be refused on the ground

that the claim in issue lacks merit or bona fides or because any fault or grounds for the claim sought to be arbitrated have not been shown."

The authority of the trial court to stay proceedings pending arbitration is not restricted to those cases where the procedure prescribed by the Uniform Arbitration Act is followed. Under ordinary circumstances matters decisive of the right of the arbitrators to act should be resolved by the court in conformity with the procedure specified by the act.[3] The pretrial hearing envisioned by Rule 16, Rules of Civil Procedure, is not generally suitable for the disposition of motions made orally at the hearing and determinative of substantial issues, particularly where no record is made at the time. The conflicting claims of the insurer and relators as to what occurred at the pretrial conference is illustrative of the problem that arises. And the court should not decide real fact issues at a pretrial conference. See, Syracuse Broadcasting Corp. v. Newhouse (2 Cir.) 271 F. (2d) 910. However, the trial judge does have power under Rule 56.04 to grant summary judgment with respect to all or some of the issues raised by the pleadings. See, Volk v. Paramount Pictures, Inc. (D. Minn.) 91 F. Supp. 902; Lynch v. Call (10 Cir.) 261 F. (2d) 130; Berger v. Brannan (10 Cir.) 172 F. (2d) 241, certiorari denied, 337 U. S. 941, 69 S. Ct. 1519, 93 L. ed. 1746; Irving Trust Co. v. United States (2 Cir.) 221 F. (2d) 303, certiorari denied, 350 U. S. 828, 76 S. Ct. 59, 100 L. ed. 740. See, also, Royster v. Ruggerio (E. D. Mich.) 2 F. R. D. 429, modified in Royster v. Lederle (6 Cir.) 128 F. (2d) 197.

"Unless the objecting party can show prejudice arising from the lack of notice * * *, exercising [summary judgment] power at pre-trial is sound. Seldom should lack of notice prejudice a party, as each party should be fully prepared on the facts applicable to the case in order to participate in the pre-trial. To compel a 10 day delay solely to comply with the notice requirements of Rule 56.03 would seem ill-advised." Hetland, Comment on Rule 16, 1 Youngquist & Blacik, Minnesota

---

[3]For a recent discussion of the distinction between the duty of the court and that of the arbitrators on questions going to the arbitrators' right to act, see Matter of Bd. of Education (Heckler Elec. Co.) 7 N. Y. (2d) 476, 199 N. Y. S. (2d) 649, 166 N. E. (2d) 666.

Rules Practice, 1962 Supp. See, also, Buffington v. Continental Cas. Co. 69 N. M. 365, 367 P. (2d) 539.[4]

In substance and effect, the stay order represents a summary judgment for defendant on the arbitration issue raised by its answer and will be so regarded.

■ The record presented to this court does not make clear whether relators' claim of waiver or estoppel was considered by the trial court.[5] For purposes of this application we will review the facts which they claim the trial court failed to consider to determine whether prejudice has resulted in such a degree as to warrant issuance of the writ.

Considered in the light most favorable to relators, the application for the writ, the return, and the affidavits show the following facts:

(a)  Before November 11, 1960, the insurer denied coverage under its policy.

(b)  No demand for arbitration was made until August 2, 1962, and the demand then made did not conform fully with the requirements of the rules of the American Arbitration Association.

(c)  Suit was instituted on the policy before arbitration was demanded.

(d)  A period of 2½ years had elapsed between the date of the accident involved and the pretrial conference at which the stay order issued.

(e)  A period of over 2 years elapsed between the date the insurer acknowledged coverage and the motion for a stay of proceedings made at the pretrial conference.

(f)  Attempts to effect a settlement of the claim between November 11, 1960, and the commencement of this action—a period of 19 months—were sluggish either because of the failure of the insurer to

---

[4]Padovani v. Bruchhausen (2 Cir.) 293 F. (2d) 546, is a recent decision written by Judge Charles E. Clark containing enlightening comments with respect to the limitations of Rule 16, Federal Rules of Civil Procedure.

[5]Waiver is the voluntary relinquishment of a known right. Beck v. Spindler, 256 Minn. 543, 99 N. W. (2d) 670. Estoppel results from acts or omissions which cause another to change his position for the worse in good-faith reliance upon such conduct. Moberg v. Commercial Credit Corp. 230 Minn. 469, 42 N. W. (2d) 54.

proceed aggressively toward agreement or because of the failure of relators to provide adequate data promptly on the question of damages or both.

(g) Relators were at all times free to invoke arbitration and were not misled by the insurer unless the expressed willingness of the latter to negotiate settlement, coupled with the failure of the parties to reach accord, could be characterized as conduct which so deceived relators to their prejudice as to give rise to estoppel.

The fact that coverage was established by relators only after declaratory judgment proceedings had been instituted and the circumstance that defendant claimed a lapse of the policy for nonpayment of premiums do not constitute a waiver. Coverage had been accepted by the insurer as of November 11, 1960. Its previous position of noncoverage was then relinquished. No prejudice resulted to the insured up to that point. We do not feel that this preliminary skirmish relating to premium payment should be construed as an intentional relinquishment of the right to arbitration. In Itasca Paper Co. v. Niagara Fire Ins. Co. 175 Minn. 73, 79, 220 N. W. 425, 427, it is stated:

"In some cases language may be found indicating that a denial of liability leaves no basis for an arbitration. Kelly v. L. & L. & G. Ins. Co. 94 Minn. 141, 102 N. W. 380, 110 A. S. R. 351; Cash v. Concordia F. Ins. Co. 111 Minn. 162, 126 N. W. 524; Page v. Rollingstone Mut. F. F. Ins. Co. 166 Minn. 74, 207 N. W. 24; Anderson v. M. Burg & Sons, Inc. 170 Minn. 53, 212 N. W. 9. But these cases involve questions where the company waived the right to arbitrate and where there was no real controversy between the parties as to the amount of loss."

In that case it was held that arbitration had not been waived. See, also, Abramowitz v. Continental Ins. Co. 170 Minn. 215, 212 N. W. 449. Arbitration has been looked upon with favor in this state. Zelle v. Chicago & N. W. Ry. Co. 242 Minn. 439, 65 N. W. (2d) 583. If the denial of liability had continued until the present action in district court had been instituted by relators, a different case would have been presented.[6]

---

[6]Anderson v. M. Burg & Sons, Inc. 170 Minn. 53, 212 N. W. 9; Moore v.

The fact that the demand for arbitration made August 2, 1962, did not conform fully with the requirements of the rules of the American Arbitration Association does not seem significant in determining whether waiver or estoppel can be found. Whatever its form, the demand gave notice that defendant intended to rely on the arbitration clause, as did its answer, served shortly after the demand was made. The important thing is that the demand disclosed an intent on the defendant's part not to abandon the arbitration provision. And the circumstance that copies of the demand and the required deposit fee were not sent to the American Arbitration Association could not prejudice the insured to the extent of estopping insurer from further resort to the arbitration provision. If the defendant had interposed an answer without pleading the arbitration provision, waiver could have been found under the rule of Independent School Dist. v. A. Hedenberg & Co. Inc. 214 Minn. 82, 7 N. W. (2d) 511, which holds that arbitration is waived by answering to the merits without a demand for arbitration or a motion to stay the suit until arbitration was had. See, also, Anderson v. Twin City Rapid Transit Co. 250 Minn. 167, 84 N. W. (2d) 593. But in this case the provision of the insurance contract calling for arbitration was pleaded in the answer. If the insurer had participated in and then withdrawn from arbitration proceedings, a waiver might have been found under the rule of Knutson v. Lasher, 219 Minn. 594, 18 N. W. (2d) 688. In this case the insurer appears to have been, and to be, willing to arbitrate.

Although 2½ years elapsed between the date of the accident and the pretrial conference at which the stay was ordered, and although settlement negotiations in the meantime were ineffectual, this delay is not proof of the insurer's abandonment of arbitration proceedings. The insured was not prejudiced thereby so long as he retained the right to institute arbitration proceedings on his own motion at any time. He had

---

Sun Ins. Office, 100 Minn. 374, 111 N. W. 260; Bratley v. Brotherhood of American Yeomen, 159 Minn. 14, 198 N. W. 128; Kelly v. Liverpool & L. & G. Ins. Co. 94 Minn. 141, 102 N. W. 380, are cited by relators in support of their contention that the initial denial of liability constituted a waiver of the right to arbitrate.

such right. Arbitration laws and arbitration procedures are intended to expedite the settlement of disputes and should not be used as a means of furthering and extending delays. See, 5 Am. Jur. (2d), Arbitration and Award, § 52. A review of the decided cases supports the conclusion that the delay here cannot be held to constitute a waiver or to give rise to an estoppel. In Reconstruction Finance Corp. v. Harrisons & Crosfield, Ltd. (2 Cir.) 204 F. (2d) 366, 37 A. L. R. (2d) 1117, certiorari denied, 346 U. S. 854, 74 S. Ct. 69, 98 L. ed. 368, a delay of 9 years in making a demand for arbitration under a contract provision therefor did not constitute laches sufficient to bar enforcement of the arbitration provision, even though the analogous statute of limitations allows only 6 years, where there was no showing of injury or prejudice as a result of the delay. In Almacenes Fernandez v. Golodetz (2 Cir.) 148 F. (2d) 625, 161 A. L. R. 1420, a delay of 6 months in applying for a stay and an order requiring plaintiff to proceed to arbitration did not constitute a waiver of the arbitration provision of the contract. See, also, Radiator Specialty Co. v. Cannon Mills, Inc. (4 Cir.) 97 F. (2d) 318, 117 A. L. R. 299; Kulukundis Shipping Co. v. Amtorg Trading Corp. (2 Cir.) 126 F. (2d) 978; Shanferoke Coal & Supply Corp. v. Westchester Serv. Corp. (2 Cir.) 70 F. (2d) 297.

Parties to an arbitration agreement are under a duty to act in good faith—each owes to the other the obligation to make a fair effort to carry out the provisions of the arbitration agreement and to accomplish the real object of the contract. Failure to act in good faith should be treated as an implied waiver of the arbitration provision and if it results in demonstrable prejudice to the insured, the insurer should be denied resort to arbitration. 5 Am. Jur. (2d), Arbitration and Award, § 53. However, there is here no such showing of absence of good faith or prejudice as will bring the case within the rule as stated.

■ In view of relators' position that mandamus should issue to avert arbitration proceedings, we do not feel it necessary to discuss the claim that no formal refusal to arbitrate has been proved. See, Knutson v. Lasher, *supra*; Shanferoke Coal & Supply Corp. v. Westchester Serv. Corp. *supra*; Independent School Dist. v. A. Hedenberg & Co. Inc. *supra*.

The burden was upon relators to show that the order of the trial court ordering the stay was so arbitrary and capricious as to constitute a clear abuse of discretion.[7] This they have failed to do. Accordingly the alternative writ of mandamus heretofore issued herein should be discharged and the application is denied.

So ordered.

---

[7]Baker v. Connolly Cartage Corp. 239 Minn. 72, 57 N. W. (2d) 657.